# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 8, 2006　　　　Decided December 1, 2006

No. 05-5366

JUDICIAL WATCH, INC.,
APPELLEE

v.

UNITED STATES DEPARTMENT OF COMMERCE,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 95cv00133)

———

*Marina Utgoff Braswell*, Assistant U.S. Attorney, argued the cause for appellant. With her on the briefs were *Kenneth L. Wainstein*, U.S. Attorney, and *Michael J. Ryan*, Assistant U.S. Attorney. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

*Paul J. Orfanedes* argued the cause for appellee. With him on the brief was *James F. Peterson*. *Michael J. Hurley* entered an appearance.

Before: RANDOLPH and TATEL, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*:  In 1995, Judicial Watch, Inc. filed an action in the District Court under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking information from the Department of Commerce ("DOC") regarding DOC's selection of participants for foreign trade missions.  In May 1995, following a search in response to Judicial Watch's FOIA requests, DOC produced approximately 28,000 pages of nonexempt information and withheld about 1,000 documents as exempt.  Disputes arose between the parties over the adequacy of DOC's search, and Judicial Watch charged that some DOC officials had destroyed or removed responsive documents.  In December 1998, following discovery, the District Court granted partial summary judgment to Judicial Watch and ordered DOC to perform a new search.  In issuing this judgment, the District Court concluded that DOC had wrongfully withheld, destroyed, and removed responsive documents, and ordered further discovery into the circumstances surrounding DOC's first search and the misconduct alleged by Judicial Watch.  DOC then conducted an exhaustive new search, and Judicial Watch conducted extensive discovery.

In March 2000, following the second search, DOC moved for summary judgment.  In November 2001, the District Court issued an order allowing Judicial Watch to expand its discovery into the circumstances of the second search.  In September 2004, the District Court finally granted DOC's motion for summary judgment, upholding DOC's then-pending exemption claims. In November 2004, Judicial Watch moved for an award of attorney fees and costs under FOIA, 5 U.S.C. § 552(a)(4)(E), in the amount of almost $950,000.  In opposing the fee request, DOC argued, *inter alia*, that there should be no award for fees generated after December 1998, because Judicial Watch had achieved no success on any of its claims following that date.  In

July 2005, the District Court awarded $897,331 to Judicial Watch in fees and costs, including about $488,000 for work performed after the court ordered a new search in December 1998.

On appeal, DOC advances three interrelated claims. Its principal claim is that "[a]n award of nearly half a million dollars for work that produced no tangible benefit to Judicial Watch amounts to a clear abuse of discretion on the part of the District Court." Appellant's Br. at 9. DOC also contends that Judicial Watch should not have been awarded fees and costs incurred after December 1998 for discovery efforts on "collateral issues." *Id.* at 17. Finally, DOC argues that the District Court "abused its discretion in awarding fees incurred in discovery disputes that Judicial Watch pursued with third parties," *id*. at 20, noting that it "had no control over these disputes, which eventually proved fruitless," *id*. at 21.

The District Court found a fee spanning the entire course of the lawsuit justified, because Judicial Watch substantially prevailed on its FOIA claim, and the post-1998 discovery was an inseparable part of that claim. We affirm the District Court's judgment in part. A portion of the post-1998 discovery was directly related to Judicial Watch's successful FOIA claim, so the District Court did not err in awarding fees for some of the work associated with the post-1998 discovery. We decline to entertain DOC's belated claim that fees should not have been awarded for some of the post-1998 discovery during which Judicial Watch allegedly engaged in a "fishing expedition." *Id*. at 10. This claim was not properly raised and preserved by DOC when it opposed Judicial Watch's fee application before the District Court; therefore, the claim is waived. DOC's last claim is meritorious, however. DOC correctly notes that a portion of the post-1998 work for which Judicial Watch seeks fees relates to protracted discovery disputes between Judicial Watch and third parties who were not within the realm of DOC's authority

or control and with respect to issues not raised or pursued by DOC. As explained more fully below, the District Court abused its discretion in awarding fees generated by these so-called third-party "litigation disputes."

## I. BACKGROUND

Judicial Watch is a non-profit corporation whose professed mission is to combat government corruption through legal and other corrective action. In the mid-1990s, Judicial Watch sought to determine whether DOC had sold seats on secretarial "trade missions" in exchange for contributions to the Democratic National Committee ("DNC") in violation of campaign finance law. Trade missions included trips to foreign countries led by the Secretary of Commerce during which representatives of U.S. companies met host nations' governments and business leaders and explored the potential for increasing trade. Judicial Watch filed multiple FOIA requests with DOC, seeking a wide array of material concerning several such trade missions. When DOC failed to respond, Judicial Watch filed suit in the District Court seeking relief under FOIA. The District Court's decisions in this case fully recount the decade-long legal battle between Judicial Watch and DOC, *see, e.g.*, *Judicial Watch, Inc. v. Dep't of Commerce* (*Partial Summary Judgment Decision*), 34 F. Supp. 2d 28, 29-41 (D.D.C. 1998); *Judicial Watch, Inc. v. Dep't of Commerce* (*Final Merits Decision*), 337 F. Supp. 2d 146, 156-57 (D.D.C. 2004), so we will only summarize the events that are most relevant to this appeal.

Shortly after Judicial Watch filed suit, DOC produced approximately 28,000 documents. Following the District Court's resolution of numerous disputes over withheld documents, DOC moved for summary judgment in favor of Judicial Watch. The District Court denied DOC's motion, declared DOC's first search "inadequate, unreasonable, and unlawful," granted *sua sponte* partial summary judgment for

Judicial Watch, and ordered DOC to conduct a second search under extremely "restrictive and rigorous" requirements. *Partial Summary Judgment Decision*, 34 F. Supp. 2d at 42-46. In reaching this result, the District Court rested on its findings that DOC had "wrongfully withheld documents, destroyed documents, and removed or allowed the removal of others, all with the apparent intention of thwarting the FOIA and [court] orders." *Judicial Watch, Inc. v. Dep't of Commerce* (*Interim Relief Decision*), 34 F. Supp. 2d 47, 48-49 (D.D.C. 1998).

Given the unique circumstances of this case, the District Court reasoned that even a comprehensive, closely monitored second search by DOC would not afford adequate relief for Judicial Watch. On this point, the trial court noted:

> There is substantial evidence that the DOC has destroyed documents and removed documents from its control in an effort to avoid releasing them to Judicial Watch. If the Court were to grant the DOC's motion and merely order a new search, these documents would not be found even by the most exhaustive of searches, and the DOC would have succeeded in circumventing the FOIA.

> The DOC recognizes this situation and proposes in its motion a plan for retrieving jettisoned information. The DOC offers to mail letters to former employees of three offices within the DOC and request that the former employees determine whether they may have removed documents from the DOC when they left and, if so, that they search the documents for information responsive to Judicial Watch's FOIA requests. While this plan is a step in the right direction, the remedy for the government's misconduct in this case must have more "teeth" than the DOC proposal offers. The courts cannot be powerless to remedy FOIA violations where the agency simply discards potentially damaging responsive documents. There must be

some mechanism by which the courts can keep the agencies from circumventing the FOIA by simply removing responsive documents from [their] control.

*Partial Summary Judgment Decision*, 34 F. Supp. 2d at 42. The District Court thus concluded that "further discovery is required" and authorized Judicial Watch "to inquire into any discoverable information related to the destruction or removal of documents" during the first search, including "some inquiry into the creation and handling of documents." *Id.* at 46. The District Court appointed a Magistrate Judge to supervise discovery, but cautioned that "Judicial Watch should not be allowed to stray from inquiries that might be reasonably calculated to lead to evidence of unlawful destruction or removal of documents." *Id.* Based on a suspicion of additional wrongdoing, later determined to be unfounded, the District Court authorized Judicial Watch to inquire into the circumstances of the second search as well. *Judicial Watch, Inc. v. Dep't of Commerce*, 196 F. Supp. 2d 1, 8 (D.D.C. 2001).

Judicial Watch conducted extensive discovery (both before and after DOC completed its second search in March 2000), issuing numerous document requests and deposing nearly 20 individuals, including current and former employees of DOC and the DNC, as well as suspected trade mission participants. Deposition questioning covered DOC's alleged misconduct during the first search; inquired about possible locations of missing documents; and probed circumstances surrounding the creation of documents, the trade missions themselves, background information about the deponents, and a number of tangential issues. The Magistrate Judge routinely overruled DOC's objections to the scope of the questioning.

The reticence of third parties to be deposed led to protracted disputes, which in turn caused the parties to submit numerous filings leading to memorandum opinions by both the Magistrate

Judge and the District Court. For example, the DNC objected to the scope of the original subpoena served upon it by Judicial Watch. The District Court limited the order's scope, but Judicial Watch, unsatisfied with the documents produced, requested that the Magistrate Judge restore the scope of the discovery order and appealed the Magistrate's refusal to do so. The District Court remanded the matter to the Magistrate Judge for reconsideration in light of newly discovered documents. The DNC submitted a letter to the Magistrate Judge accusing Judicial Watch of obtaining the new documents in contravention of congressional confidentiality protocols. The Magistrate Judge granted Judicial Watch's motion to strike the letter for failure to comply with the Local Rules of the District Court, but then granted the DNC leave to refile. The DNC refiled and the Magistrate Judge decided *sua sponte* to consider the DNC's allegations. Judicial Watch asked the District Court to set aside the Magistrate's order and filed with the Magistrate Judge a motion to strike the DNC's second filing. The District Court granted the motion to strike the DNC filings, vacated the Magistrate's order, and again remanded the matter to the Magistrate Judge. The DNC filed a motion for reconsideration in the District Court. In a published opinion, the District Court denied this motion but granted the DNC's motion to file a declaration and once again remanded the matter to the Magistrate. *See Judicial Watch, Inc. v. Dep't of Commerce*, 127 F. Supp. 2d 224, 225-28 (D.D.C. 2000). The DNC is just one of several parties with whom Judicial Watch engaged in "collateral disputes" that "sidetracked" the case. *Id.* at 227. These third-party disputes were neither initiated nor pursued by DOC, and DOC had no control over either the third parties or their disputes with Judicial Watch.

In September 2004, having found that DOC had "engaged in an exhaustive second search," the District Court granted DOC's motion for summary judgment and denied Judicial

Watch's request for further discovery. This judgment effectively disposed of the merits of the FOIA case. *Final Merits Decision*, 337 F. Supp. 2d at 159, 161, 182. Judicial Watch then moved for attorney fees under FOIA. DOC opposed an award of fees for post-1998 discovery, reasoning that it had produced nothing of consequence to the litigation. The District Court agreed that, "[w]hile Judicial Watch unearthed some further evidence of improprieties during the first search, Judicial Watch was largely unsuccessful at that task and was unable to reconstruct or locate lost or destroyed responsive documents" during the discovery conducted after December 1998. *Judicial Watch, Inc. v. Dep't of Commerce* (*Fees Decision*), 384 F. Supp. 2d 163, 167 (D.D.C. 2005). Nonetheless, the District Court rejected DOC's argument that the lack of "tangible results" prevented Judicial Watch from recovering fees. *Id.* at 171. Rather, the District Court held that the post-1998 discovery gave effect to the court's order granting Judicial Watch "a full and fair opportunity, through additional discovery, to reconstruct or discover documents . . . destroyed or removed . . . during the DOC's first search." *Id.* The District Court thus refused to distinguish between pre- and post-1998 discovery. The District Court also refused to "reduce Judicial Watch's award for the time it spent addressing post-1998 discovery motions and related matters with third-parties." *Id.* On this latter point, the District Court noted that FOIA "only requires that fees be 'reasonably incurred,' which leaves open the possibility that a plaintiff's interactions with a third party might, in limited circumstances, subject the government to a fee assessment." *Id.* at 171 n.2.

DOC now appeals, arguing that the District Court abused its discretion in awarding fees for work that did not result in any measurable success for Judicial Watch and for the time spent by Judicial Watch addressing discovery disputes with third parties.

## II. ANALYSIS

### A. *Eligibility and Entitlement to Attorney Fees Under FOIA*

Subject to specified statutory exclusions and exemptions, 5 U.S.C. § 552(b), (c), "the Freedom of Information Act requires federal agencies to make agency records available to the public upon reasonable request," *United We Stand Am., Inc. v. IRS*, 359 F.3d 595, 597 (D.C. Cir. 2004). FOIA also provides that a court may award "reasonable attorney fees and other litigation costs reasonably incurred in any case . . . in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E).

A FOIA plaintiff is *eligible* for fees if it has substantially prevailed on the merits of its claim. *Edmonds v. FBI*, 417 F.3d 1319, 1322 (D.C. Cir. 2005); *Church of Scientology of Cal. v. Harris*, 653 F.2d 584, 587 (D.C. Cir. 1981). And in order to "substantially prevail," a party must obtain court-ordered relief on the merits of its FOIA claim. *See Edmonds,* 417 F.3d at 1325 (holding that the plaintiff was *eligible* for fees because she "received not just a *declaration* of her right to expedited processing [of her FOIA claim], but an *order* that 'changed the legal relationship between the parties'" (quoting *Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939, 946 (D.C. Cir. 2005))).

Eligibility for fees does not necessarily mean that a party is *entitled* to attorney fees under FOIA. *See Edmonds*, 417 F.3d at 1327. "In determining whether a 'prevailing' FOIA plaintiff is entitled to fees, the district court [must] assess[] four factors: '(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding.'" *Davy v. CIA*, 456 F.3d 162, 166-67 (D.C. Cir. 2006) (quoting *Tax Analysts v. Dep't of Justice*, 965 F.2d 1092, 1093 (D.C. Cir. 1992)).

A plaintiff's overall success on the merits also must be considered in determining the reasonableness of a fee award. *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (citing *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 793 (1989)). Thus, when a plaintiff presents "distinctly different claims for relief that are based on different facts and legal theories," the limit on awards to "prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim." *Hensley v. Eckerhart*, 461 U.S. 424, 434-35 (1983). In some cases, however,

> claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Id*. at 435. Finally, "[t]he plaintiff who has proven both eligibility for and entitlement to fees must submit his fee bill to the court for its scrutiny of the reasonableness of (a) the number of hours expended and (b) the hourly fee claimed." *Long v. IRS*, 932 F.2d 1309, 1313-14 (9th Cir. 1991) (per curiam).

## B. *The Applicable Standard of Review and DOC's Principal Claims on Appeal*

We review the District Court's fee entitlement determination for abuse of discretion, *Davy*, 456 F.3d at 167, deferring to that court's "intimate[] associat[ion] with the case" and "continuing relationship with the parties throughout the suit," *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 706, 716 (D.C. Cir. 1977); *see also Hensley*, 461 U.S. at 437

("[T]he district court has discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.").

In this case, DOC does not contend that Judicial Watch is ineligible for fees under FOIA. Nor does DOC contest the District Court's analysis of the four factors that are weighed to determine whether a prevailing party is entitled to fees. *See Davy*, 456 F.3d at 166-67. Rather, DOC raises three objections premised on its contention that Judicial Watch should not have been awarded fees for discovery efforts undertaken after December 22, 1998. First, DOC argues that since the post-1998 discovery produced no tangible benefits for Judicial Watch, no fees should be awarded for any time spent in discovery after December 22, 1998. Second, DOC argues that much of the post-1998 discovery addressed matters that were "collateral" to Judicial Watch's FOIA request and therefore should not have been counted in the determination of fees. In other words, DOC suggests that Judicial Watch engaged in a "fishing expedition" in conducting discovery pursuant to the District Court's December 1998 order. Appellant's Br. at 10, 17. Finally, DOC argues that the District Court abused its discretion in awarding fees incurred in connection with litigation disputes that Judicial Watch pursued with third parties over whom DOC had no control and with respect to issues that had not been raised or pursued by DOC. In DOC's view, "[t]he government and the American taxpayers should not be obligated to pay Judicial Watch's fees incurred to explore avenues that had nothing to do with the FOIA requests at issue and to respond to a party other than the government." *Id*. at 22.

DOC's three claims are obviously related. Indeed, the first claim subsumes the second and third claims, and the "fishing expedition" claim overlaps with DOC's challenge to the fees

incurred in connection with "third-party" disputes. Each claim raises slightly different considerations, however. We will therefore address each claim separately in assessing the merits of DOC's appeal.

## C. *Fees Generated by Post-1998 Discovery*

DOC's principal claim is that Judicial Watch should not have been awarded any fees and costs for unsuccessful discovery efforts after December 22, 1998. More precisely, DOC argues that "[i]f a plaintiff achieves only partial success, it can be an abuse of discretion to award full fees." Appellant's Br. at 13. In DOC's view, "after December 22, 1998, Judicial Watch achieved no measure of success that was relevant to the final outcome of the case," Appellant's Br. at 14, so no fees should have been awarded for any work done after that date. We disagree.

Apparently intending to harken to the Court's holding in *Hensley*, DOC's theory obviously rests on the assumption that the post-1998 discovery was unrelated to Judicial Watch's principal FOIA claim, because it was undertaken in pursuit of "distinctly different claims for relief" and "based on different facts and legal theories." *Hensley*, 461 U.S. at 434-35. On this view of the case, DOC suggests that FOIA's limit on awards to "prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim." *Id.* DOC's premise is wrong, and its reliance on *Hensley* is misplaced.

On the record in this case, the post-1998 discovery cannot reasonably be viewed as divorced from or unrelated to Judicial Watch's principal FOIA claim. The District Court certainly did not intend to terminate the FOIA litigation when it granted interim relief on December 22, 1998. *See Interim Relief Decision*, 34 F. Supp. 2d at 57 (holding that "the case will now

proceed with limited discovery under the supervision of a Magistrate Judge"). The District Court determined that, due to DOC's misconduct in its initial response to Judicial Watch's FOIA request, a closely monitored second search by DOC would not suffice. The court therefore ordered a second search by DOC and appointed a Magistrate Judge to oversee further discovery. *See Partial Summary Judgment Decision*, 34 F. Supp. 2d at 46. This action was taken to ensure that Judicial Watch receive any responsive documents that had been removed from DOC's premises but not destroyed. In other words, the post-1998 discovery was authorized *solely* to allow Judicial Watch to pursue matters directly related to its FOIA claim. The District Court's December 22, 1998 *Partial Summary Judgment Decision* and *Interim Relief Decision* did not initiate a new action pursuant to which Judicial Watch was authorized to pursue "distinctly different claims for relief . . . based on different facts and legal theories," *Hensley*, 461 U.S. at 434, divorced from the complaint then before the court. DOC's suggestion to the contrary is specious.

Indeed, as counsel for DOC acknowledged during oral argument, the partial summary judgment issued in Judicial Watch's favor on December 22, 1998 did not result in a final appealable order. *See Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 744 (1976) ("[Grants] of partial summary judgment . . . are by their terms interlocutory, and where assessment of damages or awarding of other relief remains to be resolved have never been considered to be 'final' . . . .") (citation omitted). Had more documents been uncovered after December 1998, the District Court could have entered a further judgment in favor of Judicial Watch on its FOIA claim. The claim on the merits of Judicial Watch's FOIA claim did not terminate until September 2004, when the District Court granted DOC's March 2000 motion.

Rather, as the District Court made clear, the second search and related discovery were required to give effect to the court's order granting Judicial Watch "a full and fair opportunity, through additional discovery, to reconstruct or discover documents . . . destroyed or removed . . . during the DOC's first search." *Fees Decision*, 384 F. Supp. 2d at 171. In other words, the post-1998 discovery was intended to facilitate Judicial Watch's lawful pursuit of its principal FOIA claim. In the analogous situation where fees are incurred monitoring compliance with a consent decree, the Supreme Court instructs that "measures necessary to enforce the remedy ordered by the District Court cannot be divorced from the matters upon which [the plaintiff] prevailed in securing the consent decree." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 558-59 (1986); *see also Sierra Club v. Hankinson,* 351 F.3d 1358, 1361-64 (11th Cir. 2003) ("A district court may award fees for post-judgment monitoring of a consent decree."); *Garrity v. Sununu*, 752 F.2d 727, 738-39 (1st Cir. 1984) (same). Contrary to DOC's suggestion, the post-1998 discovery was not ordered by the trial court to allow Judicial Watch to pursue *new* claims.

On the record at hand, we hold that the District Court did not abuse its discretion in concluding that the post-1998 discovery was intended to be in furtherance of, and therefore directly related to, the FOIA claim upon which Judicial Watch substantially prevailed. The District Court did not err in concluding that at least some of the work related to the post-1998 discovery could be counted in the calculation of attorney fees due to Judicial Watch.

**D.** ***Judicial Watch's Alleged "Fishing Expedition" in Conjunction with Post-1998 Discovery***

DOC charges that Judicial Watch's post-1998 discovery was employed to engage in a "fishing expedition" that was

unrelated to its FOIA lawsuit. We decline to entertain this claim, because it was not properly preserved with the District Court. *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976) (as a general rule, "a federal appellate court does not consider an issue not passed upon below"); *Williams v. Shalala*, 997 F.2d 1494, 1500 (D.C. Cir. 1993) ("In general, an appellate court cannot consider issues not raised before the district court."). We agree with Judicial Watch that, "in opposition to the fee application below, DOC never made the argument that fees should be denied because of allegedly irrelevant lines of questions asked in certain depositions." Appellee's Br. at 24. The argument is therefore waived.

There is no doubt that DOC repeatedly objected on relevance grounds during the depositions before the Magistrate Judge. *See*, *e.g.*, Joint Appendix ("J.A.") 644, 647-50, 675-77, 902, 951, 957, 960-61, 966-67, 977, 979, 982, 984. However, in its "Memorandum of Points and Authorities in Partial Opposition to Plaintiff's Application for Attorneys' Fees," J.A. 431-59, DOC never raised any specific objections claiming that certain of the fees claimed by Judicial Watch were excessive due to inappropriate "fishing expeditions." DOC did make a general claim that some of the post-1998 discovery "delved into 'collateral issues,'" but this argument was raised in the context of DOC's claim that, because the post-1998 discovery produced no tangible benefits for Judicial Watch, no fees could be based on work done after December 1998. J.A. 443. This was not sufficient to put the District Court on notice that, in opposing fees, DOC wished to renew *specific objections* to the scope and relevance of some of the lines of inquiry pursued by Judicial Watch while taking depositions after December 22, 1998.

Unsurprisingly, having received no specific "fishing expedition," relevance, or scope of discovery objections in DOC's opposition to Judicial Watch's fee application, the District Court did not address these matters. Rather, the District

Court merely noted that it had "policed Judicial Watch's discovery to ensure that discovery remained within the scope authorized by the Court." *Fees Decision*, 384 F. Supp. 2d at 171. The court concluded that, because it had carefully "supervised post-1998 discovery to ensure relevancy, [it had] no occasion to reduce Judicial Watch's award." *Id.* DOC raised no specific objections below to contest this conclusion. Therefore, we can find no grounds on this record to overturn the District Court's judgment on this point.

**E.** ***Fees Generated by Judicial Watch's Disputes with Third Parties***

Finally, DOC argues that the District Court "abused its discretion in awarding fees incurred in discovery disputes that Judicial Watch pursued with third parties." Appellant's Br. at 20. DOC offers some examples to support its claim:

> Some extensive disputes with third parties occurred. For example, between December 22, 1998, and December 30, 2000, the docket reflects thirty-six filings concerning non-party Democratic National Committee [DNC] (including three Court orders). J.A. 38-66. The filings concerned discovery Judicial Watch was attempting to obtain from the DNC. Yet DOC had no control over these disputes, which eventually proved fruitless.

> Similarly, during that same period the docket reflects 27 docket entries concerning Judicial Watch's attempt to take the deposition of Charlie Trie. *Id.* Mr. Trie never worked for DOC and had nothing to do with the FOIA requests or the search for responsive documents.[4]

> > [4]Numerous witnesses were represented by private counsel and motions made on their behalf by private counsel were not joined by DOC. *E.g.*,

> J.A. 41-44 (Docket Nos. 420, 421, 424, 431, 472, 475).

> The list goes on.

Appellant's Br. at 21.

DOC's principal argument here is that time spent by a FOIA claimant in litigation disputes with third parties, who are not within the government's authority or control, with respect to litigation issues that were neither raised nor pursued by the government, cannot form the basis of a fee award under 5 U.S.C. § 552(a)(4)(E). "It would be manifestly unfair," in DOC's view, "to charge DOC for litigation costs over which it had no control. Accordingly, fees for such work should not have been assessed against DOC." Appellant's Br. at 22. In other words, according to DOC, such fees are not "reasonable" as required by FOIA. On the facts of this case, we agree.

Although neither party cites any case law addressing this "third-party" issue, there is authority supporting the proposition that an award of attorney fees against the government is not appropriate for those phases of litigation in which the plaintiff is opposed solely by third parties. This principle was noted but not applied in *Anderson v. Secretary of Health & Human Servs.*, 80 F.3d 1500, 1505 (10th Cir. 1996). In *Love v. Reilly*, 924 F.2d 1492 (9th Cir. 1991), however, the court held that the government was not required to pay fees attributable to the plaintiff's opposition to a third party's motion to stay a preliminary injunction granted on behalf of plaintiff. *Id.* at 1495. The court in *Love* noted that the Fifth Circuit reached a similar result in *Avoyelles Sportsmen's League v. Marsh*, 786 F.2d 631 (5th Cir.1986):

> *Avoyelle*s involved the interpretation of the Clean Water Act, which authorizes the court to award "costs of litigation (including reasonable attorney and expert witness fees) to

any party, whenever the court determines such award is appropriate." 33 U.S.C. § 1365(d). The court held that attorney's fees are only appropriate for portions of the litigation made necessary by government opposition to legitimate claims of the party seeking the award. *Id*. at 632. The court further held that an award is not appropriate for a phase of the litigation in which the party seeking an award was opposed only by other, non-governmental parties, and put the burden on the plaintiffs to show that "their claimed expenses were incurred in opposing improper *government* resistance to their rightful demands." *Id*. at 636 (emphasis added).

While this case involves the EAJA, not the Clean Water Act, we find the Fifth Circuit's reasoning in *Avoyelle*s persuasive. The *Avoyelles* court found that where plaintiffs are litigating an issue and are opposed only by private defendants, a fee award against the government would be "manifestly unfair and contrary to historic fee-shifting principles." *Id*. Similarly, an award against the government for fees incurred by NWFPA in opposing the stay is unjust because the government did not join the intervenors' motion to stay, and NWFPA has not shown that the attorney's fees attributable to fighting the stay were incurred in opposing government resistance. Consequently, the award of fees by the district court for the opposition to the stay was error.

*Love*, 924 F.2d at 1495-96; *see also Watson v. County of Riverside*, 300 F.3d 1092, 1097 (9th Cir. 2002) (holding that "[a] plaintiff can be awarded fees incurred opposing intervention [only] if the defendant either joined the intervenor's motion or if the intervenor's acts were made necessary by [the defendant's] opposition to legitimate claims of the party seeking the award") (internal citation and quotation marks omitted)); *Chem. Mfrs. Ass'n v. EPA*, 885 F.2d 1276, 1280 (5th Cir. 1989) (applying the

*Avoyelles* principle). Although some of these cases involve different fee-shifting statutes, the decisions are nonetheless instructive in construing the applicable "reasonable" standard that applies to fee awards under FOIA. "There are over 100 separate statutes providing for the award of attorney's fees; and although these provisions cover a wide variety of contexts and causes of action, the benchmark for the awards under nearly all of these statutes is that the attorney's fee must be 'reasonable.'" *Delaware Valley*, 478 U.S. at 562.

Following the principle enunciated in *Avoyelles* and *Love*, we hold that DOC should only have been liable for fees related to third parties insofar as they "were incurred in opposing government resistance." *Love*, 924 F.2d at 1496; *see also Avoyelles*, 786 F.2d at 636. Therefore, in those situations when (1) the litigation disputes between Judicial Watch and the third parties were not initiated or pursued by DOC, (2) the third parties were not represented by DOC, and (3) DOC had neither authority nor control over the third parties, no fees should have been awarded.

It is important to emphasize here that "litigation disputes" should not be confused with authorized depositions of third parties taken by Judicial Watch. DOC contests only the former, not the latter. This was confirmed in an exchange between government counsel and one of the Judges during oral argument in this case:

> **Judge:** I need to ask you just one question. As a matter of law, one of your arguments is that the government should not be required to pay for depositions of third parties, that is, non-government employees. Do you cite — I don't recall you citing anything for that proposition.
>
> **Counsel for DOC:** No your Honor, may I — if I might clarify. What we said was that we shouldn't be required to pay for litigation disputes between Judicial Watch and third

parties. So for example, there were numerous motions about John Huang and the fact that he was pleading the Fifth Amendment. We had to brief whether or not he was allowed to plead the Fifth Amendment. There were motions about the subpoena — whether or not he had to come from California and who would pay his costs. What we said was that we shouldn't have to pay for litigation that was done by Mr. Huang's attorneys over which we had no control.

**Judge:** You were — then I misunderstood — you were not arguing that if a third party is properly deposed that the government never has to —

**Counsel for DOC:** No no. We had no *per se* argument like that. It was litigation that was done that we had no control over — the government should not have to pay.

*See* Recording of Oral Argument at 27:06.

Our decision here is limited to what DOC describes as Judicial Watch's litigation disputes with third parties, excluding Judicial Watch's depositions of third parties. In other words, having lost its general challenge to fees generated by post-1998 discovery, the government does not challenge the authority of the District Court to require third-party depositions, nor does it challenge the fees that were generated by this work. Therefore, we have no need to address this issue.

At bottom, we hold that the District Court, without adequate justification, went too far in requiring the government to pay fees for the time spent by Judicial Watch litigating disputes with third parties in those situations in which (1) the litigation disputes between Judicial Watch and the third parties were not initiated or pursued by DOC, (2) the third parties were not represented by DOC, and (3) DOC had neither authority nor

control over the third parties. We remand the case so that the fee award can be recalculated and reduced accordingly.

### III. CONCLUSION

We hereby affirm the judgment of the District Court in part, reverse in part, and remand for further consideration consistent with this opinion.